UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2010-74 (WOB)

COLONY NATIONAL INS. CO.                           PLAINTIFF

VS.                    <u>MEMORANDUM OPINION AND ORDER</u>

SORENSON MEDICAL, INC.,
ET AL.                                        DEFENDANTS

This matter is before the Court on plaintiff's motion for summary judgment on defendants' counterclaims for bad faith. (Doc. 124). The Court previously heard oral argument on this motion, after which it took the matter under submission.

Having further reviewed the record, the Court now issues the following Memorandum Opinion and Order.

### Factual and Procedural Background

A. <u>The Insurance Policies at Issue</u>

Sorenson Medical, Inc. ("SMI") manufactured pain pumps which were used, as relevant here, in the shoulders of patients following surgery. SMI ceased operations in 2007, but a related entity — Sorenson Medical Products, Inc. ("SMPI") — continued manufacturing and marketing the pain pumps.[1]

---

[1] The Court will refer to defendants collectively as "Sorenson."

SMI obtained both primary and excess insurance policies for the periods July 1, 2007 to July 1, 2008 (the "Year One" policies), and July 1, 2008 to July 1, 2009 (the "Year Two" policies).[2]  The primary carrier was Columbia Casualty Company ("Columbia"), and the excess carrier was Colony National Insurance Company ("Colony").  Both policies had limits of $10 million, and both were "claims made and reported" policies.

The Columbia Year One policy had a per claim deductible of $25,000.  The Columbia Year Two policy had a $250,000 per claim deductible.

The Year One Columbia and Colony policies were issued only to SMI.  The Year Two Colony policy was also issued only to SMI.  The Year Two Columbia policy, however, included as insureds numerous other Sorenson-related entities, including SMPI.[3]

---

[2] Prior to the expiration of the Year Two policies, SMI purchased extended reporting provisions under both the Columbia and Colony policies which extended aspects of the claims-made period to July 1, 2012.

[3] As it would turn out, the ensuing pain pump cases named as defendants Sorenson-related entities which were not insured by Colony.  Those defendants retained the law firm of Adams, Stepner, Woltermann & Dusing, PLLC to represent them.  The parties refer to the legal fees and expenses incurred by those companies as the "ASWD fees."

### B. **The Pain Pump Cases and Coverage Issues**

On February 14, 2008, the first of numerous product-liability cases involving the pain pumps manufactured by Sorenson was filed in this court. *Ritchie, et al. v. SMI Liquidating, Inc.*, Cov. Civil Action No. 08-19. Ultimately, a total of thirty-seven claims were filed in Kentucky, Minnesota, Utah, California, and Mississippi.

Although these claims spanned the Year One and Year Two policy periods, in August 2008, Columbia determined that it would treat all the shoulder-pump claims as "related" and thus constituting a single claim under the Columbia Year One policy, subject to a single $25,000 deductible. Columbia thus began paying defense costs for all shoulder-pain-pump claims under its Year One Policy.

Meanwhile, shortly after Columbia informed Sorenson of its "related claims" decision, Colony — who had been notified of some of the Kentucky pain-pump cases by Columbia — began reviewing possible coverage issues. Colony claims adjuster John Reitwiesner authored a report dated September 30, 2008, detailing the pain-pump cases. Colony also retained outside coverage counsel.

On November 17, 2008, Colony issued a reservation of rights letter to Sorenson. (Doc. 28-36). The letter stated, among

3

other things, that any request for coverage was premature because the underlying coverage through Columbia had not yet been exhausted. The letter also recited other provisions of the Colony policy, including the "claims first made and reported" requirement. Further, the letter stated:

> Some of the underlying claims were filed against SMI Liquidating, Inc. f/k/a Sorenson, Medical, Inc. Please explain the relationship between SMI Liquidating, Inc. and Sorenson Medical, Inc. Argonaut reserves the right to deny coverage to any entity that does not qualify as an insured under the Argonaut policies.

(*Id.* at 10). In addition, the letter contained a chart showing the eight claims for which Colony had received notice, as well as the approximate claim dates. (*Id.* at 3).[4]

For the next year, Colony continued to monitor the pain pump cases and review coverage issues.

In early November 2009, a multiple-day mediation of the Kentucky pain-pump cases was held. Several of the higher-value claims were settled and paid by Columbia under its Year One policy, including a claim by Amber Cornett.[5]   Reitwiesner

---

[4] These eight claimants were Jessie M. Ritchie, Timothy D. Varney, Kristen A. Scharold, Gary W. Smallwood, Kathryn Belcher, Chelsea Zink, Deborah Hansen, and Kent J. Klawer. (*Id.*).

[5] Colony later successfully argued in this action that the Cornett claim fell outside the coverage grant of Colony's policy and did not count towards exhaustion of the Columbia primary policy.

attended the mediation on behalf of Colony.  At this mediation, Sorenson expressed its disagreement with Columbia's "related claims" position.  (Gregory Taylor Depo., Doc. 124-5, at 83).

In late 2009, Colony retained an outside consultant, Jack Murphy, to evaluate Colony's obligation to provide coverage to Sorenson.

A second mediation was scheduled for March 2-4, 2010.  In advance of that date, Columbia tendered to Sorenson the remaining estimated balance of $3.7 million under Columbia's Year One policy.  Columbia also restated its "related claims" position, advised Sorenson that it would not take the lead at the settlement conference, and advised Sorenson that, once Columbia's Year One policy was exhausted, it would pass defense and indemnity obligations for all remaining claims to Colony.

On February 23, 2010, Colony's counsel wrote a letter to Sorenson's counsel, stating its position in anticipation of the mediation.  (Doc. 129-4).  Colony stated that: Sorenson entities other than the named insureds would have to contribute to the settlements; Colony needed to understand Sorenson's position on the "related claim" issue in order to know when its policies would be triggered; and Colony had become aware of possible misrepresentations in Sorenson's policy applications.  (*Id.*).

At the March 2010 mediation, the parties disagreed about which policy should cover Year Two claims that were part of the proposed settlement. Columbia, having tendered the remaining limits of its Year One policy, took the position that its Year Two policy did not cover the claims. Sorenson demanded that Colony fund the portion of the settlements not covered by the remaining Columbia funds. Ultimately, several claims were settled with Columbia's remaining $3.7 million, $3.56 million from Colony, and $1 million from another carrier that insured a related Sorenson entity. The settled claims included those of Kentucky plaintiffs Spencer Morgan, Cassie Voges, and Jeffrey Wera.

After the March 2010 mediation, Columbia and Sorenson refused to fund Sorenson's defense in the numerous pain-pump cases still pending, and Sorenson argued it would be bad faith if Colony refused to do so.

Thus, on April 1, 2010, Colony sent another reservation of rights letter to defendants' counsel, for the first time identifying "gaps" in the coverage. (Doc. 27-15). The letter opened:

> Now that Colony National will be funding the defense of some (but not all) of the Sorenson entities in connection with certain lawsuits, we write to formally set forth the reservation of rights under which those costs will be reimbursed.

6

The letter then set forth specific issues:

1.   Because both the Zink and Cornett claims were made in the 2007-2008 policy period but not reported to Colony until the 2008-2009 policy period, and because the Colony policies are "claims first made and reported" policies, neither claim triggers a coverage grant. **Consequently, the Cornett settlement payment also does not erode the underlying limit of the [Columbia] policy for the purpose of reaching the Colony excess coverage.**

2.   Because the [Columbia] underlying policies contain a "relate back" provision, [Columbia's] position is that the many pain pump claims made in the 2008-2009 period "relate back" and fall within the coverage of the underlying [Columbia] 2007-2008 policy.   However, the Colony policies contain no such "relate back" clause.   Therefore, claims first made and reported in 2008-2009 would be covered only under the 2008-2009 Colony policy.   However, because those claims are covered only under the 2007-2008 underlying coverage, they cannot erode the underlying coverage for purposes of the 2008-2009 Colony excess policy.

(*Id.*)   The letter summarized these points:

**For practical purposes, this means that, if claims "relate back" under the 2008-09 [Columbia] policy, but not under the 2008-09 Colony National policy, the insureds have a substantial gap in coverage for both years.   Unless and until liability and defense costs – for claims first made in the 2007-08 or the 2008-09 policy period – exceed $10 million, no Colony National policy is triggered.**

(*Id.*) (emphasis added).

Colony also stated in this letter that it reserved "its right to decline coverage, withdraw from the defense of these claims, and/or seek recovery of any payment made."   (*Id.*).

7

### C. **This Litigation and the Utah Case**

Colony filed this declaratory judgment action on April 2, 2010, seeking a declaration that it owed no duty to defend or indemnify the Sorenson defendants in relation to pain-pump cases filed against them here in Kentucky.  Colony sought rescission of both its policies due to alleged misrepresentations during the underwriting process.  In the alternative, Colony sought a declaration that Year Two claims were covered, if at all, only under the Year Two policy (*i.e.,* that no claims were "related"). It also sought a declaration that only those claims both made and reported to Colony in the same policy period were covered.

In the meantime, on April 19, 2010, Sorenson's coverage counsel sent a letter to Columbia in which Sorenson asserted that Sorenson did not agree that all shoulder-pain-pump cases were "related claims," but only that the Kentucky claims were "related."

On May 14, 2010, Sorenson filed its answer to the complaint herein, as well as a counterclaim in which it asserted that Colony's "no related claims" position was taken in bad faith. (Doc. 11).  The same day, Columbia filed a complaint against Sorenson in federal court in Utah, seeking a declaration that all shoulder-pump claims were covered only under the Columbia Year One policy.  (Doc. 124-11).  Sorenson answered and asserted

its position that only the Kentucky claims were "related." (Doc. 124-12 at 9).

Discovery in this case proceeded, and the parties filed cross-motions for summary judgment on the coverage issues.

### D. This Court's Coverage Opinion

On December 12, 2011, this Court issued its coverage decision, holding that Colony was estopped from asserting the defense of rescission and/or had waived the right to assert it. The Court also held that the *Cornett*, *Morgan*, *Voges*, and *Wera* claims were not covered under the policies because they did not satisfy the "claims made and reported" requirement. Further, the claims did not count towards the erosion of the underlying policy limits, and Colony was not estopped from asserting this defense. (Doc. 76). The Court declined to reach the "related claim" issue under the Columbia policy, because that issue was pending before the Utah court.[6]

This Court's holding regarding the four non-covered claims created what the parties refer to as a further "gap" in coverage. That is, since the settlement payments and defense costs on those four claims did not erode the Columbia Year One

---

[6] Meanwhile, back in Utah, Columbia and Sorenson were briefing motions for summary judgment. There, for the first time, Sorenson took the position that *none* of the shoulder-pain-pump claims were "related claims." (Doc. 124-13).

policy, the Colony Year One policy had, in fact, not yet been triggered.   Thus, the $4.2 million that Colony paid in settlement and defense of those claims had been premature.

Eight days after this Court issued its coverage decision, counsel for Colony sent Sorenson's counsel a letter, stating:

- Given the total amount of the settlements and fees incurred in connection with the *Cornett*, *Morgan*, *Voges*, and *Wera* claims — which this Court held were not covered — Sorenson "must reimburse Colony the approximately 4.375 million that Colony has advanced to date, and incur an additional $2.68 million in defense and indemnity obligations [under the Year One policy] before any duty on the part of Colony is triggered;" (Doc. 87-2 at 3);[7] and

- Claims made and reported under the Year Two primary policy are covered (if at all) under that policy and are subject to a $250,000 per claim deductible.   Thus, "in addition to demonstrating that they have funded the uninsured gap recognized by the Court, the Sorenson entities must establish that both the $10 million underlying limits and $250,000 per claim deductible have been incurred in connection with the [Year Two] claims before the Colony policy is potentially triggered." (*Id.*).

On January 13, 2012, counsel for Sorenson responded, in pertinent part, that:

- It disagreed with Colony's calculation of the uninsured "gap" in coverage because some of the settlement monies for the four uncovered claims came from sources other than the underlying carrier.   (Doc. 87-3 at 3);

- Even if Colony had some right of reimbursement for funds it advanced for Year One claims which this Court

---

[7] The parties refer to these amounts as the "uninsured gap."

ultimately held were not covered (which Sorenson disputes), such a right does not affect or alter Colony's obligation to cover Year Two claims. That is, "Sorenson expects Colony to assume its defense upon the exhaustion of the [primary] Year Two policy, whether or not the Year One gap has been funded." (*Id.*).

On January 31, 2012, Colony replied that the parties would have to "agree to disagree" with regard to "whether those advanced sums will be available to Colony as a setoff in connection with any claims covered under the [Year Two] policy . . ." (Doc. 87-4 at 1).

During the course of this correspondence, on January 24, 2012, the Supreme Court of Utah issued an opinion holding that "Utah law does not allow an insurer to seek reimbursement or restitution through an extracontractual claim of unjust enrichment," but rather that "an insurer's right to reimbursement from an insured must be expressly provided in an insurance policy before it can be enforced." *United States Fidelity and Guaranty Co. v. United States Sports Specialty Ass'n*, 270 P.3d 464, 468 (Utah 2012).

### E. The Utah Federal Decision and Further Settlement Efforts

On November 14, 2012, the federal court in Utah rejected Columbia's "related claims" position and held that Sorenson was entitled to coverage for Year Two claims under the Columbia Year Two policy, thereby leaving the Colony Year Two excess policy in

11

play once the underlying limits were exhausted. (Doc. 124-4). In so doing, the Court specifically found that Columbia had anticipatorily breached its Year Two policy. (*Id.* at 29-30).

On March 28-29, 2013, Magistrate Judge Wehrman held a settlement conference in Utah, in advance of which Columbia tendered its Year Two policy limits, subject to its right to further litigate the Utah coverage dispute. Upon being informed by Sorenson of this fact, Colony responded on March 27, the day before the conference:

> As concerns the duty to indemnify, Colony remains prepared to fund [Year Two] claims against its insureds, subject to the prior reservations, in excess of the per claim SIR, in excess of the [primary] policy, **and in excess of the $4.2 advance/set-off that Colony has already paid. . . .** I understand that we are not in agreement on all aspects of these issues, but those continue to be our positions.

(Doc. 87-5 at 1) (emphasis added).

The Utah settlement conference was attended by pain-pump plaintiffs from Kentucky, Utah, and other states and their counsel; representatives of Colony and its counsel; and Sorenson's counsel. Ultimately, Sorenson demanded that Colony pay $1.7 million to resolve six remaining claims. Colony was unwilling to agree. First, it wanted a detailed accounting due to its position that some of the costs had been incurred on behalf of non-covered Sorenson entities (those not named in then applicable insurance policies). Colony also believed it was

12

entitled to a setoff of $1 million for four $250,000 deductibles that remained unpaid by Sorenson on Year Two claims. And Colony believed it was entitled to a $4.2 million setoff for previous payments it made on claims that this Court ruled were not covered.

Colony then offered to fund the settlements on an interim basis, but only with a non-waiver agreement which would require Sorenson to reimburse it if Colony later established that it was not required to pay under its Year Two policy. Sorenson rejected that suggestion, and the mediation concluded.

From April 2013 forward, Colony and Sorenson continued to debate, in lengthy correspondence, the soundness of their respective positions. Sorenson asserted that Colony had no right to reimbursement under Utah law, and, even if it did, such a right arising under the Year One policy would not excuse Colony's performance of its contractual obligations under the Year Two policy. (Doc. 88-4) Sorenson thus demanded that Colony settle all remaining claims (since the underlying policy limits and deductibles would have been exhausted by the outstanding settlement offers), but Colony refused, stating that its reimbursement claim was subject to Kentucky, rather than Utah, law and was thus valid. (Doc. 88-5). Colony further stated that, regardless of which state's law was applied, Colony

had a contractual right of setoff because Sorenson breached its contractual obligation to fund claims within its deductibles. (*Id.*).

The parties also exchanged information regarding the allocation of costs among insured and non-insured entities. (Doc. 124-22).

### F. **Sorenson's Supplemental Counterclaim for Bad Faith**

On April 29, 2013, Sorenson filed a motion for leave to file a supplemental counterclaim for bad faith based on Colony's refusal to provide coverage under its Year Two policy beginning at the March 2013 settlement conference. (Doc. 87). On July 25, 2013, this Court granted the motion and made several rulings:

- Utah law, rather than Kentucky law, applies to Sorenson's counterclaim for bad faith;

- Under Utah law, "an insurer's right to reimbursement from an insured must be expressly provided in an insurance policy before it can be enforced." *U.S. Fidelity and Guarantee Co. v. U.S. Sports Specialty Ass'n*, 270 P.3d 464, 468 (Utah 2012). There is no such express provision in the Colony policies, and Sorenson's counterclaims were thus not futile on this ground.

- Colony's assertion that it had a contractual basis for reimbursement based on Sorenson's failure to pay deductibles under the primary policy for several claims was erroneous. As Sorenson noted, it was Columbia that construed these claims -- wrongfully, as the Utah Court held -- as "relating back" and falling only within the Year One primary policy, which carried only a one-time $25,000 deductible.

14

- Finally, Colony could not rely on language in the Columbia policy that provides for reimbursement. Colony is not a party to that policy, and any right to reimbursement held by the primary carrier would not inure to Colony's benefit where its own policy -- a separate contract with Sorenson -- contains no such language.

(Doc. 92).

On August 29, 2013, the parties participated in a settlement conference before the undersigned. Colony offered $500,000 to settle all claims, while Sorenson demanded $1.5 million plus the retention of its bad-faith claims. Sorenson informed Colony and the Court that Sorenson had reached agreements with the remaining plaintiffs using funds from Sorenson and Columbia, assigning to them Sorenson's rights against Colony for indemnity for the balance of the agreed-upon amounts. Colony acknowledged that the settlement values of the remaining claims were reasonable, but the parties were unable to resolve the coverage dispute.

From September 2013 until March 2014, Colony and Sorenson continued to negotiate over their respective obligations. Colony stated that it was not conditioning settlement on reimbursement of the $4.2 million but that it did refuse to advance monies for fees incurred by non-insured Sorenson entities. (Doc. 124-18). It also stated that it was entitled to a setoff for the $1 million in deductibles that Sorenson had not paid under the Columbia Year Two policy. Colony increased

15

its settlement offer to $750,000, but Sorenson stated that its demand remained $1.5 million.

Sorenson also suggested that the parties call a "wash" between fees that had been incurred on behalf of non-insured entities and the $325,000 that a third carrier had contributed to the *Zink* settlement, on the theory that that contribution had inured to Colony's benefit by delaying the erosion of the Columbia policy. (Doc. 124-25). Colony rejected this suggestion. (Doc. 124-26).

In October 2013, Colony sent Sorenson a check for $252,000, which it said represented the $1.5 million demand less the $1 million in unpaid deductibles and fees incurred on behalf of non-insured entities. Colony also agreed to pay $267,000 to settle the one remaining Kentucky claim (*Knochelman*).[8]

In March 2014, Magistrate Judge Wehrman held another settlement conference among Colony, Sorenson, and five remaining Utah claimants. The Utah claimants agreed to settle for $395,000, paid by Colony, thereby resolving all outstanding claims.

The parties conducted discovery on the bad-faith counterclaims, and Colony filed the motion for summary judgment now before the Court.

---

[8] In January 2014, Sorenson agreed to pay its deductible in *Knochelman* to resolve that claim.

16

On July 1, 2015, in the Utah federal action, Judge Dee Benson ruled that Sorenson was required to pay the four disputed $250,000 deductibles under the Columbia Year Two policy. (Doc. 134 at 70). Judge Benson deferred determining whether Columbia or Colony was entitled to receive that money, pending the Court's receipt of further information from Columbia. (*Id.* at 71).

### *Analysis*

#### A. <u>Utah Law of Bad Faith</u>

As parties to a contract, "the insured and the insurer have parallel obligations to perform the contract in good faith, obligations that inhere in every contractual relationship." *Black v. Allstate Ins. Co.*, 100 P.3d 1163, 1168 (Utah 2004) (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985)). This "implied obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Id.*

Further, in the third-party context such as this, "claims submitted by third parties must be diligently investigated to determine their validity and then reasonably evaluated in light

of all the facts." *Id.* at 1169.  However, "this duty to investigate and reasonably evaluate a third-party claim does not require that the insurer's evaluation ultimately prove to be correct." *Id.*  Rather, as the *Black* court explained:

> [W]hether an insurer discharges its duty in these instances hinges upon whether the investigation and subsequent resolution of the claim is fair and reasonable.  This may depend upon various considerations, including, for example, the extent and availability of evidence, whether available evidence is collected and witnesses are contacted, common practice in the industry, and clarity of the evidence with regard to issues of liability.

*Id.*

Under Utah law, "a breach of contract is not necessary for a claim of bad faith to arise." *Colony Ins. Co. v. The Human Ensemble, LLC*, 299 P.3d 1149, 1153 (Utah Ct. App. 2013) (citing *Christiansen v. Farmers Ins. Exch.*, 116 P.3d 259 (Utah 2005)). Finally, the Supreme Court of Utah has stated:  "When faced with a decision as to whether to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights." *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 237 (Utah 1985).

### B. Application to Sorenson's Counterclaims

Sorenson asserts three bases for its bad-faith claim: (1) Colony's delay in seeking rescission of the policies on the basis of misrepresentations in the application process; (2) Colony's means of asserting the "claims made and reported"

18

defense; and (3) its denial of coverage under the Year Two policy for "unlawful" reasons. (Doc. 129 at 43).

### a. Rescission

Sorenson argues that Colony did not act diligently in asserting a right to rescission based on alleged misrepresentations by Sorenson in the underwriting process. According to Sorenson, this action constituted bad faith on Colony's part.

As support for this argument, Sorenson relies on this Court's holding in the December 21, 2011 coverage opinion that Colony was estopped from asserting its right to rescission because the company, collectively, was in possession of information that should have put it on notice of questions concerning the accuracy of certain information provided by Sorenson in connection with its policy applications. (Doc. 76, at 24-30). The Court stated:

> [N]o reasonable jury could find that Colony acted reasonably and timely in invoking any right to rescission that it may have had in regard to the alleged misrepresentations it now alleges. In the alternative, Colony waived any such right by failing, after learning the above information, to assert that right, instead extending the policy and collecting further premiums.

*Id.* at 29.

This finding in the estoppel context, however, cannot necessarily be bootstrapped into creating a triable issue as to

19

whether Colony was acting in bad faith by asserting a right to rescission in this action.  As previously noted, Utah law holds that an insurer is entitled to seek a declaratory judgment to determine the parameters of its coverage obligations.  *Farmers Ins.*, 712 P.2d at 237-38.

Colony's claim for rescission presented a good faith, justiciable claim inasmuch as this Court found that there were indeed triable issues as to whether Sorenson misrepresented certain facts during the underwriting process.  (Doc. 76 at 21, 24).  The Court's conclusion that Colony was nonetheless estopped from availing itself of rescission was based on a very fact-intensive analysis of the information that was available to Colony as a whole entity.  The Court did not find that any particular individual made a deliberate decision to refrain from asserting a right to rescission in order to disadvantage Sorenson.

Further, one must remember that Colony is the excess carrier.  Although it learned of the pain-pump cases in 2008 and instituted a coverage review shortly thereafter, it was not until just before the March 2010 mediation that the underlying Columbia policy neared exhaustion, thereby triggering Colony's policy and its duty to defend.  Consequently, Colony sent Sorenson's counsel a letter on February 23, 2010, alerting him

20

to various coverage issues, including the possible misrepresentations. (Doc. 129-4). Colony thus acted promptly once its policy was called into play and alerted its insured to the possible grounds for rescission.

Thereafter, both carriers and Sorenson disagreed about which policies should cover certain Year Two claims, and Sorenson threatened Colony with bad-faith claims if it declined to fund Sorenson's defense. Colony thus promptly filed this declaratory judgment action on April 2, 2010, while in the meantime defending Sorenson under a reservation of rights.

Thus, while Colony ultimately did not prevail on its claim for rescission, given all the surrounding circumstances, the record does not contain evidence that would support a reasonable finding of bad faith based on its assertion of that claim in this action.

### b. "Claims Made and Reported"

Sorenson next argues that Colony acted in bad faith by failing, until April 2010, to identify specifically four claims (those of Morgan, Wera, Voges, and Cornett) that were outside the coverage grant because they were not "made and reported" within the same policy period.

In its very first reservation of rights letter of November 17, 2008, however, Colony emphasized the fact that its policy

21

was a "claims made and reported" policy.   (Doc. 28-36).   The letter set out the relevant policy language explaining the nature of this coverage grant, stating: "The Argonaut Policies only apply to claims first made against Sorenson and reported in writing during the policy period.   To the extent an underlying claim was not both first made and reported during the effective dates of one of the Argonaut Policies, then no coverage will be provided under that Policy for that claim." (*Id.* at 10-11).

Further, the letter listed the claims for which Colony had received notice.   (*Id.* at 3).   Although the Cornett, Morgan, Wera, and Voges claims had all been filed and served on Sorenson before July 1, 2008 (the end of the Year One policy period), they were not listed on this chart.   It thus should have been obvious to Sorenson that Colony's records did not reflect that notice of these claims had been given to Colony in the policy period in which they were made.

As this Court held in the coverage opinion, an insured has a duty to read its insurance policy.   (Doc. 76 at 41).   Further, in *Colony Ins. Co. v. The Human Ensemble, LLC*, 299 P.3d 1149, 1153 (Utah Ct. App. 2013), the Court of Appeals of Utah held that an insurer's duty of good faith does not "extend[] so far as to encompass an obligation to inform the insured of the

22

general type of policy that the insured has purchased." *Id.* at 1154-55.

Thus, Colony gave Sorenson — who, as this Court has noted, was by then represented by sophisticated counsel — more than sufficient information to alert it to the fact that these four claims fell outside the coverage grant of the policy in question. A reasonable jury thus could not find that Colony acted in bad faith in this regard.

### c. Year Two Policy

Sorenson's final theory of bad faith is based on what it terms Colony's "refusal" to provide coverage under the Year Two policy from the time of the March 2013 settlement conference until all remaining claims were settled in March 2014. Specifically, Sorenson asserts that Colony's insistence that it was entitled to reimbursement of $4.2 million that it had paid in defense and settlement of claims which turned out not to be covered was contrary to the *U.S. Sports* decision of the Supreme Court of Utah, which was issued on January 24, 2012.

It is true that, in advance of the March 2013 mediation, Colony asserted a right to reimbursement of the $4.2 million. During the mediation, however, Colony also asserted other concerns with paying the $1.7 million demanded by Colony: there were fees and expenses that were incurred on behalf of non-

insured entities (the "ASWD fees"); Colony wanted an accounting due to the complexity of the impact of the numerous prior settlements, which included both covered and non-covered claims; and the parties disputed whether Sorenson was obligated to pay four $250,000 deductibles under the Columbia Year Two policy.[9] Indeed, as Colony notes in its reply brief, these additional issues had been raised by Colony as far back as 2008. (Doc. 130-3) (chart of correspondence).

Further, Colony offered to fund the remaining settlements on an interim basis while allowing the parties to continue to negotiate.  (Doc. 88-5 at 4).  Sorenson rejected that suggestion, the mediation concluded, and the parties continued to debate their positions.

After this Court rejected several of Colony's arguments about the $4.2 million reimbursement issue — albeit only in the context of the futility analysis in ruling on Sorenson's motion to amend its bad-faith counterclaim — Colony made a $500,000 settlement offer during a conference held before this Court on August 29, 2013.  Sorenson's demand remained at $1.5 million plus the retention of its bad-faith claims.

Thereafter, Colony stated that it was not conditioning settlement on reimbursement of the $4.2 million but that it

---

[9] As noted, the Utah court eventually held that Sorenson was required to pay those deductibles.

24

remained concerned about the other issues.   It also increased its settlement offer to $750,000, but Sorenson did not change its demand.   Ultimately, Colony funded a settlement with the remaining plaintiffs in March 2014.

Colony therefore never made the $4.2 million reimbursement issue an absolute and standalone condition for settlement. Instead, it continued to negotiate, to suggest ways to resolve disputed issues, to increase its offer.   And it ultimately resolved all the claims with Sorenson paying only its deductibles.

Given the unusual nature and complexity of the pain-pump litigation as a whole, and particularly the complicated insurance issues as to the primary and excess layers that repeatedly surfaced during settlement efforts, the record does not support a reasonable finding that Colony acted in bad faith in its treatment of the reimbursement issue, even though its legal position turned out to be questionable under Utah law.

For all these reasons, the Court concludes that Colony is entitled to summary judgment on defendants' counterclaims for bad faith under Utah law.

Therefore, having reviewed this matter, and being otherwise sufficiently advised,

**IT IS ORDERED** that plaintiff's motion for summary judgment on defendants' counterclaims for bad faith (Doc. 124) be, and is hereby, **GRANTED**.  A separate judgment shall enter in due course.

This 30th day of July, 2015.

Signed By:

_William O. Bertelsman_

United States District Judge